T.C. Summary Opinion 2005-118

UNITED STATES TAX COURT

N. THOMAS RYAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13239-02S.          Filed August 10, 2005.

N. Thomas Ryan, pro se.

<u>Francis Mucciolo</u> and <u>Michael D. Zima</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, all subsequent section references are to the Internal

Revenue Code in effect at relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax under section 6651(a)(1) and (2) and section 6654(a), as follows:

| | | | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2)[1] | Sec. 6654(a) |
|------|-----------|-----------------|--------------------|--------------|
| 1997 | $37,341 | $8,176 | -- | $1,629 |
| 1998 | 20,875 | 4,696 | -- | 664 |
| 1999 | 27,562 | 6,201 | -- | 967 |

[1] The notice of deficiency did not include an amount for this addition.

After concessions[1] by the parties, the issues for decision are: (1) Whether petitioner's horse training and breeding activity during 1997, 1998, and 1999 was an activity not engaged in for profit within the meaning of section 183; (2) whether petitioner is entitled to joint filing status for married individuals under section 1(a)(1) for 1997, 1998, and 1999; (3) whether petitioner is entitled to long-term capital gain treatment on the 1997 sale of approximately 700 shares of securities; and (4) whether petitioner received nonemployee compensation of $10,800 in 1997.

---

[1] Petitioner concedes that he is liable for the additions to tax under sec. 6651(a)(1) and sec. 6654(a) for the tax years in issue. Respondent concedes that petitioner is not liable for additions to tax under sec. 6651(a)(2) for the tax years in issue.

Some of the facts have been stipulated, and they are so found. The stipulation of facts, the stipulation of settled issues, and the attached exhibits are incorporated by this reference. Petitioner resided in Brooksville, Florida, at the time the petition was filed.

At the time the notice of deficiency was issued, petitioner had not filed Federal income tax returns for 1997, 1998, and 1999. Respondent determined: (1) That petitioner received wage income for each tax year in issue; (2) that petitioner was entitled to a standard deduction for married filing separate status; (3) that petitioner received income on the sale of certain securities in 1997 which is taxable as short-term capital gain rates; and (4) that petitioner received nonemployee income in 1997.

Petitioner does not dispute that he received wage income in the amounts determined by respondent. Petitioner does, however, dispute the filing status, the characterization of capital gain income, and a portion of the omitted nonemployee income. Immediately before trial, petitioner submitted penciled returns for the years in issue in which he claimed the following losses for a horse breeding activity:

## Horse Breeding Activity

| Year | Gross Income | Expenses | Loss[1] |
|------|--------|----------|------|
| 1997 | --- | $28,884 | ($28,884) |
| 1998 | --- | 31,878 | (31,878) |
| 1999 | --- | 33,131 | (33,131) |

[1] At trial, petitioner asserted that expenses (and losses) for 1997 and 1998 were $24,327.81 and $32,382.45, respectively.

Respondent asserts that the horse breeding activity did not constitute an activity engaged in for profit under section 183, and that petitioner is not entitled to those losses. For convenience, we will combine our findings and discussion herein.

## I. Burden of Proof

Generally, the burden of proof is on the taxpayer. Rule 142(a)(1). Under section 7491, the burden of proof shifts from the taxpayer to the Commissioner if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's tax liability. Sec. 7491(a)(1).

It appears that the examination of the years in issue commenced after the effective date of section 7491. Petitioner has conceded that he has not satisfied any of the criteria of section 7491(a)(1) or (2). We conclude that the burden of proof remains on petitioner for the years in issue.

## II. General Background

Petitioner was employed as a full-time emergency room physician during the tax years in issue. He received taxable

wage income of $229,176 in 1997, $231,587 in 1998, and $276,600 in 1999. Petitioner worked for EMSA Contracting Services, Inc. (EMSA), during 1997, 1998, and 1999, and for Florida EM-I Medical Services, Inc. (EM-I), during 1999. He worked 12-hour shifts and was scheduled to work 12 to 18 shifts each month.

In 1997, petitioner also worked part time as a medical director for Florida Regional EMS (Florida EMS). In 1998 and 1999, petitioner worked for Health Central (HC).[2]

During the years in issue, petitioner was married to Janene Ryan. Petitioner and his wife owned and bred horses.

III. Horse Activity

A. General

The deductibility of a taxpayer's expenses attributable to an income-producing activity depends upon whether that activity was engaged in for profit. See secs. 162, 183, 212. Section 162 provides that a taxpayer who is carrying on a trade or business may deduct ordinary and necessary expenses incurred in connection with the operation of the business. Section 212 provides for a deduction for expenses paid or incurred in connection with an activity engaged in for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

---

[2] The record is unclear regarding the nature of petitioner's work at HC.

Section 183 specifically precludes deductions for activities not engaged in for profit except to the extent of the gross income derived from such activities. Sec. 183(a) and (b)(2). For example, deductions are not allowable for activities that a taxpayer carries on primarily as a sport or hobby or for recreation. Sec. 1.183-2(a), Income Tax Regs. For a taxpayer's expenses in an activity to be deductible under section 162 or section 212, and not subject to the limitations of section 183, the taxpayer must show that he engaged in the activity with an actual and honest objective of making a profit. Hulter v. Commissioner, 91 T.C. 371, 392 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Hastings v. Commissioner, T.C. Memo. 2002-310. Although a reasonable expectation of a profit is not required, the taxpayer's profit objective must be actual and honest. Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs. Whether a taxpayer has an actual and honest profit objective is a question of fact to be resolved from all the relevant facts and circumstances. Hulter v. Commissioner, supra at 393; Hastings v. Commissioner, supra; sec. 1.183-2(a), Income Tax Regs. Greater weight is given to objective facts than to a taxpayer's mere statement of intent. Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs. The taxpayer bears the burden of establishing the requisite profit objective.

Rule 142(a); <u>Keanini v. Commissioner</u>, 94 T.C. 41, 46 (1990); <u>Hastings v. Commissioner</u>, <u>supra</u>.

Petitioner is not entitled to a presumption that his horse activity is engaged in for profit under section 183(d) because petitioner's gross income from his horse activity has not exceeded deductions for any 2 years in the period of 7 consecutive taxable years ending with the first of the years in issue. See sec. 183(d). The burden of proof has not shifted to respondent. It remains on petitioner. See <u>id.</u>

B. <u>Losses From the Horse Breeding Activity</u>

Petitioner's involvement with horses began in 1996, when he and his wife purchased Nu Time Spot (NTS), an Appaloosa Stallion, from a friend. Petitioner bought NTS as a foal. Petitioner wanted to breed NTS but did not do so immediately, because foals cannot be bred until they are at least 3 years old. Petitioner also knew that prospective purchasers wanted older, well-trained foals. Petitioner believed it was best to obtain broodmares and breed foals.[3] Petitioner and his wife hoped to sell the foals and offer NTS as a stud.

Regulations promulgated under section 183 provide the following nonexclusive list of factors which normally should be considered in determining whether an activity was engaged in for

---

[3] Petitioner had five broodmares and two 2-year-old foals at the time of trial.

profit: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs. No single factor, nor the existence of even a majority of the factors, is controlling, but rather it is an evaluation of all the facts and circumstances in the case, taken as a whole, that is determinative. Golanty v. Commissioner, 72 T.C. 411, 426-427 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs.

1. The Manner in Which the Taxpayer Carried On the Activity

The fact that a taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate a profit objective. Sec. 1.183-2(b)(1), Income Tax Regs.

Petitioner did not keep adequate and accurate records of his horse breeding activity. He did not describe measures he took for bookkeeping or discuss a method for recording information

that would indicate that he carried on the activity in a businesslike manner. A taxpayer is required to maintain records sufficient to substantiate deductions that he claims on his tax return. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Petitioner did not file tax returns for the years in issue, nor did he seek the advice of an accountant or bookkeeper to maintain books or records.[4]

Petitioner commingled the financial affairs of the horse breeding activity with his personal finances. He paid all the expenses of the horse activity from his personal account and maintained no separate financial accounts for the horse activity. The commingling of funds is an indication that the activity is a hobby rather than a business for profit. See Ballich v. Commissioner, T.C. Memo. 1978-497.

To the extent petitioner maintained records of his business activity, the records were disorganized. He placed canceled checks and receipts from his horse breeding activity in a box or in Ziploc bags. Petitioner would store the box or bags in his

_____

[4] When this case was first called for trial at a prior session of this Court, petitioner requested a continuance so that he could prepare returns for the years in issue. Petitioner's request was granted, and the case was scheduled on the next calendar. One week before trial, petitioner submitted Federal income tax returns to respondent. Then, at trial, petitioner requested another continuance in order to adjust the farm expenses claimed. The request for continuance was denied, and the trial was held at a date later in the session.

house, barn, or garage or other places.  Petitioner retained some canceled checks, but his records were incomplete.

Petitioner did not develop a business plan.  He never consulted an accountant or purchased accounting software for his horse breeding activity.  Petitioner did not prepare a written analysis of the time it would take him to break even or make a profit.

Petitioner's wife met with two people in the horse breeding business.  She discussed the financial aspects of their respective operations and the feasibility of entering into the horse breeding business.  Petitioner did not present any evidence as to how these discussions affected the conduct of the activity.

Petitioner did not conduct the horse training and breeding activity in a businesslike manner.  This factor weighs against petitioner.

### 2.  The Expertise of the Taxpayer or His Advisers

A taxpayer's expertise and extensive study of an activity's accepted business and economic practices, or consultation with experts, may indicate a profit objective.  Sec. 1.183-2(b)(2), Income Tax Regs.

Petitioner did not consult with experts to become knowledgeable about techniques of training and breeding horses, nor did he learn the economics of the activity.  As previously indicated, petitioner's wife spoke with two persons about the

financial aspects of their respective horse breeding activities. However, petitioner did not elaborate on those conversations regarding the advice, if any, or on the economic aspects of horse training and breeding. Petitioner and his wife may have received some advice on the economic aspects of horse breeding, but the facts do not indicate that petitioner received any specific business advice on how to start and operate a horse breeding business.

Petitioner's wife has handled, ridden, and cared for horses all of her life. Apparently, Mrs. Ryan had gained substantial experience in the training, breeding, health, and maintenance of horses since leaving high school. Mrs. Ryan's experience is not the same as knowledge of the financial aspects of creating a profitable horse breeding program. See McKeever v. Commissioner, T.C. Memo. 2000-288 (taxpayer's background as a lifelong horsewoman did not provide sufficient expertise on the economic aspects of a horse pursuit to indicate a profit objective). This factor weighs against petitioner.

### 3. The Time and Effort Expended by the Taxpayer in Carrying On the Activity

The fact that a taxpayer devotes much of his or her personal time and effort to an activity may indicate a profit objective, especially where the activity does not involve substantial personal or recreational aspects. Id.

From 1997 through 1999, petitioner worked twelve to eighteen 12-hour shifts each month as a full-time emergency room physician.  Petitioner also worked part time for other medical-related entities in addition to his full-time work.  Petitioner worked approximately 180 hours each month.

Nevertheless, petitioner spent some of his time working with his wife in the maintenance and care of their horse breeding activity.  He traveled to horse shows with his wife.  He purchased feed and cleaned, bathed, brushed, and fed the horses.  He took care of the horse farm and ran errands that benefited the horses.  Petitioner's wife, however, did most of the work regarding the care of the horses.  Petitioner did not use the horses for more than minimal personal or recreational use.  This factor weighs in petitioner's favor.

### 4.   The Expectation That the Assets Used in the Activity May Appreciate in Value

A taxpayer's expectation that assets such as land and other tangible property used in an activity may appreciate in value to create an overall profit may indicate that the taxpayer has a profit objective as to that activity.  Sec. 1.183-2(b)(4), Income Tax Regs.  An overall profit is present if net earnings and appreciation are enough to recoup losses sustained in prior years.  Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967).

Petitioner indicated that his primary expectation for a profit came from the anticipated appreciation in the value of his horses. He failed to explain the basis of that expectation. Petitioner knew that it was unlikely that he and his wife would earn a profit from their horse breeding activity because they purchased NTS as a foal, and NTS physically could not breed with a mare for at least 3 years. Petitioner asserted that it would be another 3 years after NTS was ready for breeding before petitioner would sell any of the stallion's foals. This 6-year timeframe does not include the mare's 11-1/2 month-gestation period. Petitioner knew that the sale of a horse from his breeding activity would not occur until, at least, more than 7 years into the activity.

Furthermore, the record shows that petitioner's horse breeding activity produced a history of losses. Petitioner reported substantial losses for 1997, 1998, and 1999. There is no record of any receipts for the years in issue or years following. This factor weighs against petitioner.

### 5. The Success of the Taxpayer in Carrying On Other Similar or Dissimilar Activities

Although an activity is unprofitable, the fact that a taxpayer has previously converted comparable activities from nonprofitable to profitable enterprises may show a profit objective. Sec. 1.183-2(b)(5), Income Tax Regs.

Neither petitioner nor his wife has ever been involved in any other entrepreneurial ventures.  This is a neutral factor.

### 6.   The Taxpayer's History of Income or Losses With Respect to the Activity

The fact that a taxpayer incurs a series of losses beyond an activity's startup stage may indicate the absence of a profit objective as to that activity unless the losses can be blamed on unforeseen or fortuitous circumstances beyond the taxpayer's control.  Sec. 1.183-2(b)(6), Income Tax Regs.; cf. Golanty v. Commissioner, 72 T.C. at 427 (horsebreeding activity may be engaged in for profit despite consistent losses during the startup phase).

Petitioner attributes part of his losses to a depressed market due to the September 11, 2001, terrorist attacks. Petitioner testified that, before 2001, he could have received $10,000 to $20,000 dollars for a 3-year-old foal, but in 2004, petitioner believed that a 3-year-old foal would yield a maximum of $10,000 to $12,000 dollars.  Petitioner had several years of losses because he did not have any 3-year-old foals to sell.

Petitioner had losses totaling $93,893 for tax years 1997, 1998, and 1999 combined.  While the events of September 11, 2001, may have depressed the market, petitioner did not make any sales or have any foals available for sale during the years in issue. There is no evidence of any gross receipts from this activity at

any time before or after the years in issue.  This factor weighs against petitioner.

7.  The Amount of Occasional Profits, if any, Which Are Earned

The amount of profits earned in relation to the amount of losses incurred, the amount of the investment, and the value of the assets in use may indicate a profit objective.  See sec. 1.183-2(b)(7), Income Tax Regs.  Absent actual profits, the opportunity to earn substantial profits in a highly speculative venture may be sufficient to indicate that the activity is engaged in for profit.  See id.; see also Dawson v. Commissioner, T.C. Memo. 1996-417 (taxpayer's belief that a champion horse could generate a substantial amount of revenue and correspondingly large profits may be probative of a profit objective).

Petitioner speculated that he could have earned substantial income through breeding NTS.  Petitioner purchased NTS because he was a special stallion, one of two grandchildren of a 10-time, world champion, Appaloosa horse.  When petitioner purchased NTS, he believed that this stallion could sire foals ranging in value from $5,000 to $20,000, depending on the foal's age.  Yet petitioner provided no proof of the Appaloosa breed's ability to command a price of $5,000 to $20,000 per foal.  This factor weighs against petitioner.

### 8. The Financial Status of the Taxpayer

The fact that a taxpayer does not have substantial income or capital from sources other than an activity may indicate that the activity is engaged in for profit. See sec. 1.183-2(b)(8), Income Tax Regs. The fact that a taxpayer does have substantial income from sources other than an activity, on the other hand, may indicate that the activity is not engaged in for profit. The latter is especially true where losses from the activity generate substantial tax benefits or where there are personal or recreational elements involved. Sec. 1.183-2(b)(9), Income Tax Regs.

Petitioner received approximately $229,176 in 1997, $231,587 in 1998, and $276,600 in 1999 in wages from his work as an emergency room physician. Petitioner averaged $244,000 per year as a full-time wage earner over the 3-year tax period. The salary or income for each tax year in question, which petitioner hoped to offset by claimed losses, indicates that the activity is not one engaged in for profit. This factor weighs against petitioner.

### 9. Elements of Personal Pleasure or Recreation

The absence of personal pleasure or recreation relating to the activity in question may indicate the presence of a profit objective. Sec. 1.183-2(b)(9), Income Tax Regs. The mere fact that a taxpayer derives personal pleasure from an activity,

however, does not necessarily mean that he or she lacks a profit objective with respect thereto.  A profit objective may be present in the latter case if the activity is truly engaged in for profit as evidenced by other factors.

Petitioner derived some pleasure from the horse breeding activity (he enjoyed the horses and attended horse shows and other events with his wife), but we do not find that the enjoyment rose to the level of recreational activity.  Petitioner did not ride the horses for recreational purposes, although his wife rode them when she showed the horses at certain horse-related events.  This factor is neutral.

On the basis of the above analysis, we conclude that petitioner is not entitled to the claimed losses resulting from his horse breeding activity.

IV.  Filing Status

In order to qualify for rates applicable to "Married Individuals Filing Joint Returns", an individual must make a joint return with his or her spouse pursuant to section 6013. Sec. 1(a)(1).  Joint filing status is not permitted unless a joint return is filed and made a part of the record before the case is submitted to the Court for decision.  Phillips v. Commissioner, 86 T.C. 433, 441 n.7 (1986), affd. in part and revd. in part 851 F.2d 1492 (D.C. Cir. 1988); Gudenschwager v. Commissioner, T.C. Memo. 1989-6 ("If a taxpayer has not filed a

return by the time his case is submitted for decision, it is too late for the taxpayer to file a joint return and elect joint filing status.").

Petitioner submitted 1997, 1998, and 1999 Federal income tax returns to respondent approximately 1 week before trial and before the matter was submitted. On the 1997 and 1999 returns, petitioner checked the box "married filing joint return".[5] The returns were signed by petitioner, but not by his wife.

Under certain circumstances, Federal income tax returns may be considered joint returns if one spouse signs the returns and checks the box indicating that the returns are joint returns. Sec. 1.6013-1(a)(2), Income Tax Regs.; see Heim v. Commissioner, 27 T.C. 270, 273 (1956) (where filing status on tax return indicated married filing joint return, but the taxpayer's wife did not sign return, did not object to its filing, or did not file a separate return herself, it was presumed that the joint return was filed with the tacit consent of the wife), affd. 251 F.2d 44 (8th Cir. 1958). However, returns signed by just one spouse will qualify as valid joint returns only if both spouses intend to file joint returns. Gudenschwager v. Commissioner, supra.

---

[5] On the 1998 return, petitioner checked the box "married filing separate returns". Thus, it is clear petitioner did not intend to file a joint return for 1998.

The factors evidencing intent to file a joint return are: Lack of reason for a refusal to file a joint return, the absence of objections by the nonsigning spouse, the delivery of tax data to the husband for the purpose of making the tax return, and the apparent advantage in filing a joint return. Heim v. Commissioner, supra.

The Federal income tax returns petitioner submitted to respondent reported taxable wage income of $223,776 for 1997 and $274,080 for 1999. Petitioner's wife received wage income of $6,288 in 1997 and $9,759 in 1999. The wage income petitioner reported on the Federal income tax returns does not include the wage income received by his wife. The returns reflect only petitioner's wage income for 1997 and 1999.

There is no evidence that petitioner's wife intended to file a joint return with petitioner for 1997 or 1999. We conclude that petitioner is not entitled to joint filing status for any of the years in issue. Respondent's determination is sustained.

V. 1997 Sale of Stock

On November 26, 1997, petitioner sold 700 shares of Barnett Banks, Inc. stock. Respondent determined in the notice of deficiency that petitioner had short-term capital gain on the sale of 700 shares of stock.

Petitioner received proceeds of $49,568 from the sale of the 700 shares of stock. The parties stipulated that petitioner had

a cost basis of $17,843.15 (including brokerage fees and commissions) on the first 541.4054 of the 700 shares sold. Petitioner and respondent did not stipulate the cost basis for the remaining 158.5946 shares sold. Petitioner substantiated his claim that the 700 shares of stock were purchased during the 1980s. Petitioner presented credible testimony that he paid for the stock through automatic deductions from his checking account over a 5-year period. We are satisfied that petitioner purchased the 700 shares of stock and held them for more than 1 year; therefore, petitioner is entitled to long-term capital gain treatment on the sale of the 700 shares of stock. See sec. 1222(3).

## VI.  1997 Nonemployee Compensation

Respondent determined that petitioner received $10,800 in nonemployee compensation from Florida EMS in 1997. The parties stipulated that petitioner received nonemployee compensation in 1997 from Florida EMS of "at least" $5,400. Petitioner asserts that Florida EMS mistakenly sent a duplicate Form 1099-MISC, Miscellaneous Income, to respondent showing $5,400. Petitioner presented credible testimony that he received Form 1099 income during 1997 of $5,400, and not $10,800. Respondent did not present a copy of a second Form 1099 showing $5,400, but rather

relied on an IRPTR transcript[6] of account reflecting receipt of two Forms 1099 showing $5,400 each.

Petitioner credibly testified that the second Form 1099 was a duplicate. At trial, petitioner accepted responsibility for failing to file his Federal income tax returns and failing to keep adequate records of the horse breeding activity. He agreed to all omitted income, except the additional $5,400 reflected on Form 1099. We conclude, on this record, that petitioner did not receive additional other income of $5,400 as determined by respondent.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.

---

[6] The document is a Certificate of Official Record, Information Returns Master File Transcript. Respondent was unable to provide any detail as to the source of the $5,400 reflected in the transcript.